# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **MICHAEL JOSEPH KOON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| v. ) | |
| ) | **No. 13-1006-JWL** |
| **CAROLYN W. COLVIN,**[1] ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security Disability (SSD) benefits and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Commissioner's decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

**I.    Background**

---

[1]On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD and SSI, alleging disability beginning September 7, 2006. (R. 15, 113-20). Plaintiff exhausted proceedings before the Commissioner, and seeks judicial review of the final decision denying benefits. He claims that the Administrative Law Judge (ALJ) erred by failing to allow counsel to question the vocational expert regarding the opinion of Plaintiff's treating physician, by failing to assess borderline intellectual functioning as a severe impairment in this case, and in weighing the medical opinions of his treating physician and his treating therapist. He argues that because of these errors, the court should remand for an immediate award of benefits.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971); Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining at step four whether, in light of the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the

economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court finds no error in the decision below and affirms that decision.  It addresses each issue in the order it would appear when applying the sequential evaluation process, and begins with the last allegation of error in Plaintiff's Brief--that the ALJ erred by interfering with counsel's efforts to question the vocational expert and by adopting an adversarial role at the hearing.  (Pl. Br. 38-41).

## II.     The ALJ's Interference with Cross-Examination

Plaintiff quotes the hearing transcript of an exchange which occurred when counsel began to question the vocational expert regarding mental limitations opined by Plaintiff's treating physician, Dr. Lassey.  (Pl. Br. 39-40).  In that exchange, after the ALJ determined that Dr. Lassey was not a mental health specialist, he stated that he would not allow counsel to ask such questions because the physician "has no expertise to even submit anything dealing with the mental issues."  (R. 859).  Counsel responded that Dr. Lassey is "a medical doctor who treats the Plaintiff and has prescribed psychotropic medications."  Id.  At that point, the ALJ stopped questioning Dr. Lassey's expertise with

mental health issues but began questioning the duration and frequency of Plaintiff's treatment relationship with Dr. Lassey.  Id. at 859-60.

Plaintiff argues that it was error for the ALJ to prevent counsel's line of questioning, because a medical doctor is qualified to treat his patient's mental health issues, because the opinion of a physician who has done so is worthy of consideration, and because the vocational implications of that opinion should be placed into the record and considered by the ALJ.  (Pl. Br. 41).  Plaintiff argues that by "preventing Plaintiff's counsel from questioning the expert vocational witness regarding the findings of the treating physician, the ALJ failed to accord Plaintiff a full and fair hearing, turning said hearing into an adversarial process."  Id.  The Commissioner argues that this alleged error does not require remand because the ALJ rejected the functional limitations assessed by Dr. Lassey, and even if this line of questioning had been allowed, it would not have affected the outcome of the decision.  (Comm'r Br. 18).

The court finds that Plaintiff has shown no error because Plaintiff cannot show that the ALJ prevented counsel from questioning the vocational expert with regard to the issue of mental health opinions.  To be sure, the ALJ expressed the intent not to allow that line of questioning because Dr. Lassey is not a mental health specialist.  But, Plaintiff explained that Dr. Lassey is a medical doctor who has treated Plaintiff's mental health issues, and the ALJ did not finally decide that issue--apparently because he also questioned whether Dr. Lassey actually meets the definition of a "treating source"--and he began asking questions in that regard.  Plaintiff never asked the ALJ for a definitive

5

ruling whether he might question the vocational expert regarding Dr. Lassey's opinion regarding mental limitations.

In response to the ALJ's questioning regarding the treating source issue, counsel explained that Dr. Lassey had a two-year treating relationship with Plaintiff, and Plaintiff testified that he had seen Dr. Lassey "twice a month maybe" in that two years.  (R. 860).  The ALJ responded that the records do not reflect treatment by Dr. Lassey twice a month.  Id.  In a portion of the hearing transcript which Plaintiff did not quote in his Brief, Plaintiff admitted that he had seen Dr. Lassey "maybe six, seven" times in two or three years.  Id.  Counsel then explained that some of the records may be labeled as Family Practice Associates, where Dr. Lassey is an associate, he implied that the ALJ may have missed some of Dr. Lassey's treatment records because of that, and he suggested that even though some of the treatment at Family Practice Associates was provided by other people, those records should also be attributed to Dr. Lassey.  Id.  But, the ALJ never made a decision whether to allow the line of questioning.  At the end of this exchange, counsel for Plaintiff stated, "Your Honor, if it helps[,] I withdraw that particular question that you have a concern with.  And I have only one other question of our Expert.  I won't ask about that MSS [(Medical Source Statement)]." Id.

The invited error doctrine prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was error.  Eateries, Inc. v. J.R. Simplot Co., 346 F.3d 1225, 1229 (10th Cir. 2003); John Zink Co. v. Zink, 241 F.3d 1256, 1259 (10th Cir. 2001).  This doctrine has also been applied where the error was

6

invited in administrative proceedings. St. Anthony Hosp. v. Dept. of H.H.S., 309 F.3d 680, 686, 690, 696 (10th Cir. 2002). Since Plaintiff withdrew the line of questioning before receiving a final decision on whether it would be allowed, he cannot now complain that the ALJ prevented him from following that line of questioning.

### III. Step Two Failure to Include Borderline Intellectual Functioning as a Severe Impairment

Plaintiff cites four instances in the record where Plaintiff was diagnosed with borderline intellectual functioning,[2] and notes that the diagnosis is consistent with Plaintiff's limited education and low-skilled work history, and that people with borderline intellectual functioning are part of a group of people who have a lower quality of life, more psychoses, and reduced functioning. (Pl. Br. 36-37). He argues that borderline intellectual functioning may have an effect on certain mental abilities with which Plaintiff alleges problems, that the ALJ did not dispute the diagnosis of borderline intellectual functioning, and that it was therefore error not to find that borderline intellectual functioning is one of Plaintiff's impairments which is "severe" within the meaning of the Act and regulations. The Commissioner argues that the ALJ did not commit error in this regard at step two of the evaluation process because he considered Plaintiff's cognitive issues and their effects on all mental functioning areas, and in the RFC assessed included mental limitations which account for all of Plaintiff's cognitive deficits.

---

[2]One of the diagnoses to which Plaintiff cites is a diagnosis of "history of borderline intellectual function" (R. 660), but neither Plaintiff nor the Commissioner argues that this makes any difference.

7

An impairment is not considered "severe" at step two if it does not significantly limit plaintiff's ability to do basic work activities such as walking, standing, sitting, carrying, understanding simple instructions, responding appropriately to usual work situations, and dealing with changes in a routine work setting.  20 C.F.R. §§ 404.1521, 416.921.  The Tenth Circuit has interpreted the regulations and determined that to establish a "severe" impairment or combination of impairments at step two of the sequential evaluation process, plaintiff must make only a "de minimis" showing.  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  Plaintiff need only show that an impairment would have more than a minimal effect on his ability to do basic work activities.  Williams, 844 F.2d 748, 751 (10th Cir. 1988).  However, he must show more than the mere presence of a condition or ailment.  Hinkle, 132 F.3d at 1352 (citing Bowen v. Yuckert, 482 U.S. 137, 153 (1987)).  If an impairment's medical severity is so slight that it could not interfere with or have a serious impact on plaintiff's ability to do basic work activities, it could not prevent plaintiff from engaging in substantial work activity and will not be considered severe.  Hinkle, 132 F.3d at 1352.

Here, Plaintiff cites to the diagnosis of borderline intellection functioning to argue that it should have been considered a "severe" impairment within the meaning of the Act and regulations.  But, he must show more than the mere presence of an impairment to establish a severe impairment.  Hinkle, 132 F.3d at 1352.  Moreover, that an impairment with which Plaintiff is diagnosed might have an effect on certain mental abilities with which Plaintiff claims to have problems, or that people who have such an impairment are

8

part of a group of people who <u>tend</u> to have a lower quality of life, more psychoses, and reduced functioning, says little about whether that impairment actually causes those effects on <u>Plaintiff's</u> ability to perform basic work activities.

In <u>Brescia v. Astrue</u>, 287 F. App'x 626, 628-629 (10th Cir. 2008), the claimant argued that the ALJ improperly determined that several of her impairments did not qualify as severe impairments.  The court held that once an ALJ has found that plaintiff has at least one severe impairment, a failure to designate another as "severe" at step two does not constitute reversible error because, under the regulations, the agency at later steps in the evaluation process considers the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  Later that same year, in <u>Hill v. Astrue</u>, 289 F. App'x. 289, 291-292, (10th Cir. 2008), the court held that the failure to find that additional impairments are also severe is not in itself cause for reversal so long as the ALJ, in determining plaintiff's RFC, considers the effects "of <u>all</u> of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'"  The ALJ found that Plaintiff has severe impairments, and assessed RFC limitations based upon all of Plaintiff's impairments.  Plaintiff does not point to record evidence which demonstrates that the mental limitations resulting from his borderline intellectual functioning cause greater restrictions than those assessed by the ALJ in this case.  He has shown no error in the ALJ's alleged failure to find that borderline intellectual functioning is a "severe" impairment in the facts of this case.

9

## IV.     Evaluating Opinions of Treating Medical Sources

Plaintiff claims the ALJ erred by according little weight to the opinions of his treating physician and of his treating therapist.  With regard to Dr. Lassey's opinion, Plaintiff argues that the ALJ discounted the opinion because Dr. Lassey "did not see the Plaintiff on a frequent basis" (Pl. Br. 31) (quoting R. 23), and that this is error because Dr. Lassey "treated Plaintiff on multiple occasions over the course of three years."  Id.  In support of his argument, Plaintiff alleges that "Dr. Lassey's opinion is consistent with the record" because his opinion regarding "mental health functioning is generally supported by the opinions of" Dr. Witt, LSCSW Norris, and Dr. McGehee.  Id. at 32.  He concludes his argument, asserting that "it is significant error to accord the opinions of non-examining consultants greater weight than the opinion of a treating physician."  Id.

Plaintiff makes similar arguments in claiming the ALJ erred in discounting the opinion of his treating therapist, Ms. Norris.  (Pl. Br. 34-35).  He argues that Ms. Norris is a specialist in the field of mental health who has a treating relationship with Plaintiff.  He argues that contrary to the ALJ's finding, Ms. Norris's opinion is consistent with the treatment record and with the opinion of Dr. Lassey, and is "supported by" the opinions of Dr. Witt and Dr. McGehee.  Id.

### A.     Standard for Evaluating Opinions by Medical Sources

A treating physician's opinion about the nature and severity of a claimant's impairments should be given controlling weight by the Commissioner if it is well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent

10

with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician's opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned that opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

A treating source opinion which is not entitled to controlling weight is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927."  Watkins, 350 F.3d at 1300.  Those factors are:  (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing Goatcher v. Dep't of Health & Human Servs., 52 F.3d 288, 290 (10th Cir. 1995)).  However, the court will not insist on a factor-by-factor analysis so long as the "ALJ's decision [is] 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Oldham v. Astrue, 509 F.3d 1254, 1258 (10th Cir. 2007) (quoting Watkins, 350 F.3d at 1300).  After

considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. If the ALJ rejects the opinion completely, he must give specific, legitimate reasons for doing so. Watkins, 350 F.3d at 1301.

Recognizing the reality that an increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources"--nurse practitioners, physician's assistants, social workers, and therapists, the Commissioner promulgated Social Security Ruling (SSR) 06-3p. West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2013). In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id., Rulings, 330-31.

SSR 06-3p explains that such opinions will be evaluated using the regulatory factors for evaluating medical opinions; id. at 331-32 (citing 20 C.F.R. §§ 404.1527, 416.927); and explains that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the

12

adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id. at 333; see also Frantz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007).

### B.    The ALJ's Findings

Here, the ALJ explained the weight he gave to the opinion of each medical practitioner which was in the record, including the opinion of Plaintiff's therapist:

> Dr. Lassy [sic] submitted two separate medical source statements (Exhibits 21F, 27F).  His initial opinion was rendered in October 2009.  He opined that the claimant is limited to sedentary work with postural and environmental limitations.  He also opined that the claimant would miss 2 days of work each month.  His second opinion, which he rendered in January 2011, was fairly consistent with the first opinion he rendered, but he opined that the claimant would miss only 1 day of work each month.  The record shows [(1)] he did not see the claimant on a frequent basis; in fact he saw the claimant only a few times.  Notably, [(2)] he never treated him for any pain associated with his right knee.  [(3)] He generally saw him to prescribe psychotropic medications.  [(4)] There are no functional examinations contained within his treatment notes to support his opinions.  His opinions are [(5)] inconsistent with the claimant's activities of daily living that include completing household chores and walking to the library.  They are also [(6)] inconsistent with the fact the claimant has received a minimal amount of treatment for his knee pain.  In addition, they are [(7)] inconsistent with the fact the claimant only takes Tylenol to treat his pain.  For these reasons, the opinions of Dr. Lassy [sic] are not afforded controlling weight but are afforded little weight.
>
> Annette Norris, LSCSW opined that the claimant has marked limitations in several areas of mental functioning (Exhibit 22F).  Social Worker Norris [(1)] saw the claimant on only a few occasions to prescribe him psychotropic medications.  Notably, [(2)] her mental status examinations of the claimant were all essentially normal, which is inconsistent with her opinions that the claimant has marked limitations (Exhibit 24F, pp. 6, 10, 13, 15).  Her opinions are [(3)] inconsistent with the fact the claimant has sought only a minimal amount of mental health treatment.  In addition, her opinions do not address the claimant's palpable [(4)] non-compliance with taking medication and his [(5)] continued extensive use of marijuana.  Furthermore, her opinions are [(6)] inconsistent with the claimant's ability

13

> to go the library on a daily basis, which shows he can have some social contact.  Her opinions are also [(7)] inconsistent with the fact that he can use the computer to play games and use facebook, which indicates he has the ability to engage in simple tasks.  For these reasons, her opinions are afforded little weight.
>
> Dr. McGehee opined that the claimant had marked limitations in several areas of mental functioning and was unable to complete a normal workday or workweek (Exhibits 17F, 18F).  These opinions [(1)] do not address the claimant's continued extensive use of marijuana.  They are [(2)] inconsistent with his activities of daily living that include performing some household chores and going to the library.  They are not consistent with the fact that [(3)] he has not been compliant with taking his medications and [(4)] has sought treatment only on a sporadic basis.  Furthermore, they are [(5)] not consistent with her own report that indicated he had no problems with his thought processes and was not experiencing any suicidal ideations.  Therefore, I give these opinions little weight.
>
> The state agency medical consultant opined that the claimant is limited to light work with additional postural limitations (Exhibit 5F affirming 10E).  These opinions [(1)] are consistent with the fact that the claimant walks to the library every day.  In addition, they are consistent with the fact the claimant has [(2)] not sought much treatment for his knee and is [(3)] only taking Tylenol to treat his knee pain.  In addition, they [(4)] are consistent with the fact the claimant reported he was able to complete household chores, which indicates he can engage in physical activity.  Therefore, these opinions are given significant weight.
>
> The state agency psychological consultant opined that the claimant can understand, remember and follow simple instructions, should have infrequent contact with the public and can adapt to changes in the workplace setting (Exhibit 11F).  These opinions [(1)] are consistent with his daily activities that include going to the library and using the computer daily.  In addition, they [(2)] are consistent with the fact that he has some social interaction including finding friends on facebook.  They, are [(3)] also consistent with the fact the claimant has not consistently sought treatment, which indicates he is not significantly limited by his symptoms.  Therefore, these opinions are given significant weight.

(R. 23-24) (numbering added to emphasize reasons for discounting or crediting opinions).

### C. Analysis

With regard to Dr. Lassey's opinion as noted above, the ALJ provided seven reasons for discounting that opinion. Plaintiff directly attacks only reason number one, arguing that Dr. Lassey "treated Plaintiff on multiple occasions over the course of three years." (Pl. Br. 31). Plaintiff's argument relies merely on the definition of "treating source," but the ALJ acknowledged that Dr. Lassey is a treating source. The point of reason number one is that even though Dr. Lassey was Plaintiff's treating physician, he saw Plaintiff only a few times over the course of three years. Moreover, the ALJ went on to explain that the treatment provided by Dr. Lassey did not reflect the restrictions presented in Dr. Lassey's opinion. Plaintiff did not address the many inconsistencies relied upon by the ALJ, but instead argued that "Dr. Lassey's opinion is consistent with the record," and is "generally supported" by other medical opinions. (Pl. Br. 32). Plaintiff does not point to specific record evidence which is allegedly consistent with Dr. Lassey's opinion, and does not explain the specific support provided to Dr. Lassey's opinion by the other medical source opinions. The essence of Plaintiff's argument is an invitation to the court to reweigh the record evidence and substitute its judgment for that of the Commissioner. That is a course which the court is prohibited from taking. Bowman, 511 F.3d at 1272 (court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency").

Plaintiff's argument with regard to Ms. Norris's opinion is to a similar effect. Plaintiff addresses none of the seven reasons given for discounting Ms. Norris's opinion,

but argues in the most general terms that her opinion is "supported by the opinions of examining mental health specialists." (Pl. Br. 34). He does not explain the specific support provided by the other medical source opinions. That Ms. Norris's opinion is consistent with Dr. Lassey's opinion is unhelpful to Plaintiff's cause because the ALJ provided seven specific, legitimate, and essentially uncontradicted reasons to discount Dr. Lassey's opinion. Plaintiff's appeal to certain GAF (global assessment of functioning) scores in the record which are, in his view, consistent with Ms. Norris's opinion is merely another invitation to reweigh the evidence, which the court must again decline.

It is Plaintiff's responsibility to point to evidence in the record which precludes the findings of the Commissioner, it is not enough to point to evidence which would support a different determination. Plaintiff must demonstrate the error in the ALJ's rationale or finding; the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination. "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted). Therefore, where as here the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.

Plaintiff also argues that the ALJ was required to recontact both Dr. Lassey and Ms. Norris for clarification of the medical bases their opinions. (Pl. Br. 30, 33, 34). Plaintiff quotes from the regulations which require that a medical source be recontacted when his or her report "contains a conflict or ambiguity that must be resolve, . . . does not contain all of the necessary information, or does not appear to be based on medically acceptable clinical and laboratory techniques." (P. Br. 30) (quoting 20 C.F.R. § 404.1512(e)(1)).

The problem with Plaintiff's argument in this regard is that the ALJ stated his specific reasons to discount the opinions and did not find that the reports of Dr. Lassey or Ms. Norris contained a conflict or ambiguity that must be resolve, that they did not contain all of the necessary information, or that they were not based on medically acceptable clinical and laboratory techniques. Moreover, Plaintiff points to no record evidence suggesting that these defects exist in the reports. Plaintiff has not established a basis to require recontacting these medical sources. There is no need to recontact a medical source merely because the ALJ discounted that source's opinion.

Plaintiff's argument that "it is significant error to accord the opinions of non-examining consultants greater weight than the opinion of a treating physician" (Pl. Br. 32), is negated by the court's finding above. The ALJ stated seven specific, legitimate reasons to accord little weight to the opinions of both the treating source physician, Dr. Lassey, and the therapist who treated Plaintiff, Ms. Norris, and Plaintiff has shown no error in those determinations. Moreover, the ALJ stated specific, legitimate reasons for

17

according significant weight to the opinions of the state agency non-examining consultants. Plaintiff does not argue that any of those reasons are erroneous. In such circumstances, it is not error to accord greater weight to the non-examining source opinions than to the opinion of the treating source physician or of the therapist who treated Plaintiff.

Plaintiff has shown no error in the decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 17th day of June 2014, at Kansas City, Kansas.

        s:/ John W. Lungstrum
        **John W. Lungstrum**
        **United States District Judge**